# Exhibit A

FILED
5/31/2023 2:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L005626
Calendar, A
22945538

**IN THE CIRCUIRT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| JOSEPH HOLLIS, Individually, and as Father and Next Friend of DIESEL HOLLIS, a Minor, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. |
| THE J.M. SMUCKER COMPANY, | ) ) ) |
| Defendant. | ) |

**COMPLAINT AT LAW**

NOW COMES Plaintiff, Joseph Hollis, Individually, and as Father and Next Friend of Diesel Hollis, a Minor, and complaining of the Defendant The J.M. Smucker Company, hypothetically and in the alternative, stating as follows:

**COMMON FACTUAL ALLEGATIONS**

1.    This action arises out of Defendant's unlawful and unreasonable conduct directly causing a Salmonella outbreak impacting potentially thousands of U.S. consumers who purchased and/or consumed certain lots of Jif peanut butter.

2.    On May 20, 2022, Defendant announced that it was "recalling select Jif® peanut butter products sold in the U.S. due to potential salmonella contamination." *See* J.M. Smucker Co. Company Announcement, attached hereto as Exhibit A.

3.    "The recalled peanut butter was distributed nationwide in retail stores and other outlets" and include the lot codes 1274425 – 2140425. *Id.*

4.    Also on May 20, 2022, the Food and Drug Administration ("FDA") published "Outbreak Investigation of Salmonella: Peanut Butter (May 2022)", attached hereto as Exhibit

1

2

B, notifying the public of its investigation in conjunction with the U.S. Centers for Disease Control and Prevention ("CDC") and local partners into a "multistate outbreak of *Salmonella* Senftenberg infections linked to certain Jif brand peanut butter products produced at the J.M. Smucker Company facility in Lexington, Kentucky."

5. According to the CDC, as of May 25, 2022, there were 16 reported cases of *Salmonella* connected to Defendant's Jif—100% of the people who were interviewed reported eating peanut butter prior to becoming ill, and 90% of those interviewed reported which brand peanut butter and all of them identified Jif. As a result, "Epidemiological evidence indicates that Jif brand peanut butter produced in the J.M. Smucker Company facility located in Lexington, KY, is the likely cause of illnesses in this outbreak." See Exhibit B.

6. The JIF Peanut Butter is a "Contaminated Product", and the FDA advised purchasers of the Contaminated Products not to eat them. *See* Exhibit B.

7. However, prior to the recall, Plaintiffs purchased Jif brand peanut butter and consumed it. Shortly after consuming it, Plaintiff Joseph Hollis and his son, Diesel Hollis, a Minor, became ill.

8. Defendant's violations of laws and regulations prohibiting the sale of contaminated and misbranded food, deviations from reasonable manufacturing and production standard practices, and failures to ensure the quality and safety of the Contaminated Products prior to sale directly caused Plaintiff's economic and noneconomic losses.

9. According to the CDC, *Salmonella* are a group of bacteria that can cause a gastrointestinal illness and fever called salmonellosis. *Salmonella* can be spread by food handlers who do not wash their hands and/or the surfaces and tools they use between food preparation steps, and when people eat raw or undercooked foods. *Salmonella* can also spread

2

FILED DATE: 5/31/2023 2:02 PM   2023L005626

FILED DATE: 5/31/2023 2:02 PM   2023L005626

from animals to people. People who have direct contact with certain animals, including poultry and reptiles, can spread the bacteria from the animals to food if they do not practice proper hand washing hygiene before handling food. Pets can also spread the bacteria within the home environment if they eat food contaminated with *Salmonella*.

10.     Most people infected with *Salmonella* will begin to develop symptoms 12 to 72 hours after infection. Salmonellosis usually lasts four to seven days. Most people with salmonellosis develop diarrhea, fever, and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases may become fatal. The CDC estimates that approximately 450 persons in the United States die each year from acute Salmonellosis.

11.     Due to the range in severity of illness, people should consult their healthcare provider if they suspect that they have developed symptoms that resemble a *Salmonella* infection. Most people who get ill from *Salmonella* have diarrhea, fever, and stomach cramps. Most people recover without specific treatment and should not take antibiotics. Antibiotics are typically used only to treat people who have severe illness or who are at risk for it. Some people's illness may be so severe that they need to be hospitalized.

12.     The CDC previously cautioned that "[t]he true number of sick people in an outbreak is also likely much higher than the number reported. This is because many people recover without medical care and are not tested for *Salmonella*." https://www.cdc.gov/salmonella/senftenberg-05-22/epi.html.

13.     Defendant manufactures, distributes, advertises, markets, and sells Jif peanut butter ("Jif"). There are many sizes and varieties of Jif available. The contaminated varieties are listed on Exhibits A and B.

14.     The Contaminated Products reportedly originated from Defendant's Lexington, Kentucky facility, and were distributed nationwide.

3

4

15.     The Contaminated Products include those with lot codes 1274425 – 2140425.

16.     Lot codes are included alongside the "best-if-used-by" date on the product.

17.     On May 20, 2022, Defendant issued a recall, informing purchasers and consumers of Jif with lot codes 1274425 – 2140425 that their peanut butter was contaminated with *Salmonella*.

18.     The FDA instructed consumers not to eat the products. *See* Exhibit B.

19.     From May 12, 2022 to May 18, 2022, Plaintiff, Joseph Hollis and his son, Diesel, consumed Jif Peanut Butter that maintained product code 2035425.

20.     Defendant identified the Jif Peanut Butter with product code 2035425 as being one of The Contaminated Products.

21.     The Contaminated Products were contaminated with *Salmonella.*

22.     Defendant directs, controls, and participates in the manufacturing and packaging of the Contaminated Products and the peanut butter ingredients in them. As part of that direction, control, and participation, Defendant determines and is responsible for setting manufacturing and quality standards, proper hygiene of employees, maintaining clean facilities through reasonable and necessary health and safety measures, and ensuring that the products manufactured and sold to consumers comply with federal, state, and local laws and regulations.

23.     Defendant violated state and federal laws and rules prohibiting the sale of adulterated, contaminated, and misbranded foods; and failed to exercise reasonable care in setting manufacturing and quality standards, ensuring proper hygiene of employees and equipment, maintaining clean facilities through reasonable and necessary health and safety measures, and ensuring that the products manufactured and sold to consumers comply with federal, state, and local laws and regulations.

FILED DATE: 5/31/2023 2:02 PM     2023L005626

5

FILED DATE: 5/31/2023 2:02 PM   2023L005626

24.     As a result of Defendant's failures, acts, and omissions, Plaintiffs suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

## COUNT I
## Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (815 ILCS 505/1, *et seq.*)

### Joseph Hollis v. Defendant

26.     Plaintiff repeats and realleges paragraphs 1–25, as if fully set forth herein.

27.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, provides protection to consumers by mandating fair competition in commercial markets for goods and services.

28.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS 505/2.

29.     The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

30.     Defendant is a "person," as defined by 815 ILCS 505/1(c).

31.     Plaintiff and each member of the Illinois Subclass are "consumers," as defined by 815 ILCS 505/1(e), because they purchased Contaminated Products.

32.     The Contaminated Products are "merchandise," as defined by 815 ILCS 505/1(b).

33.     Defendant made false and fraudulent statements, and misrepresented, concealed,

FILED DATE: 5/31/2023 2:02 PM    2023L005626

and omitted material facts regarding the Contaminated Products, including the misrepresentation that the Contaminated Products were safe for human consumption, and the omission that the Contaminated Products contained *Salmonella*.

34. Defendant's aforementioned misrepresentations, omissions, and concealment regarding the Contaminated Products constitute deceptive and unconscionable acts or practices prohibited by the DTPA.

35. Defendant's aforementioned misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

36. Defendant's aforementioned misrepresentations, omissions, and concealment were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of the Contaminated Products to Plaintiff and Illinois Subclass members.

37. Defendant's aforementioned misrepresentations, omissions, and concealment are unconscionable because they offend public policy and/or cause substantial injury to consumers.

38. Defendant's aforementioned conduct is deceptive and unlawful because it violated the Illinois Food, Drug & Cosmetic Act ("IFDCA"), 410 ILCS 620/3–3.3. The Contaminated Products were adulterated and misbranded, in violation of the IFDCA. 410 ILCS 620/2.11; 410 ILCS 620/14(a)(2)(A), (a)(2)(B), (d).

39. Defendant intended that Plaintiff rely on its respective aforementioned false statements, misrepresentations, omissions, and concealment of material facts in purchasing Contaminated Products.

40. Plaintiff reasonably relied on Defendant's respective misrepresentations, omissions, and concealment when they purchased the Contaminated Products.

41. Acting as reasonable consumers, had Plaintiff been aware of the true facts regarding the presence of *Salmonella* in the Contaminated Products, they would have declined to purchase these products.

42. Acting as reasonable consumers, Plaintiff could not have avoided the injuries suffered by purchasing the Contaminated Products because they did not have any reason to suspect that the products contained *Salmonella*. Moreover, the detection of *Salmonella* in food requires rigorous and specialized scientific testing that goes well beyond the level of inquiry a reasonable consumer would make into the issue, and, in any event, such testing was not possible without Plaintiff and Illinois Subclass members first purchasing the Contaminated Products.

43. As a direct and proximate result of Defendant's false, misleading, and deceptive acts and practices set forth above, Plaintiff suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

44. As a result of Defendant's failures, acts, and omissions, Plaintiff suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

45. These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

WHEREFORE, the plaintiff, JOSEPH HOLLIS, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

## **COUNT II**

FILED DATE: 5/31/2023 2:02 PM    2023L005626

FILED DATE: 5/31/2023 2:02 PM    2023L005626

### Negligence

### Joseph Hollis v. Defendant

46.     Plaintiff repeats and realleges paragraphs 1–25, as if fully set forth herein.

47.     Defendant manufactured distributed, marketed, promoted, and sold the Contaminated Products.

48.     Defendant owned a duty of care to Plaintiff to exercise reasonable care in manufacturing, distributing, marketing, promoting, and selling the Contaminated Products, including a duty to prevent the sale of food products contaminated with *Salmonella*.

49.     Plaintiffs are reasonable consumers who rely on Defendant to manufacture, distribute, market, promote, and sell its food products in a safe and reasonable manner in compliance with food health and safety laws.

50.     Defendant was aware that Plaintiffs rely on Defendant to manufacture and sell safe food products, and in the case of the Contaminated Products, that they are ready to eat.

51.     Defendant breached its duty of care by:

   a.  violating state and federal laws and rules prohibiting the sale of adulterated, contaminated, and misbranded foods, which laws were designed to protect the class of persons to which Plaintiff and Class members belong;

   b.  failing to exercise reasonable care in setting manufacturing and quality standards, and ensuring proper hygiene of employees and equipment;

   c.  failing to maintain clean facilities through reasonable and necessary health and safety measures;

   d.  failing to ensure that the products that left its facilities were safe for

8

9

FILED DATE: 5/31/2023 2:02 PM    2023L005626

human consumption; and

   e.   failing to warn Plaintiff and Class members that the Contaminated Products were not safe to eat and were contaminated with *Salmonella*.

52.   As a direct and proximate result of Defendant's failures set forth above, Plaintiff suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

53.   As a direct and proximate result of Defendant's failures, acts, and omissions set forth above, Plaintiff suffered injuries of a personal and pecuniary nature, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, emotional distress, and economic damages for medical treatment.

54.   These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

WHEREFORE, the plaintiff, JOSEPH HOLLIS, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

## COUNT III
**Strict Product Liability**

**Joseph Hollis v. Defendant**

55.   Plaintiffs repeat and reallege paragraphs 1–25, as if fully set forth herein.

56.   Defendant is in the business of selling Jif peanut butter to consumers.

57.   The Contaminated Products sold by Defendant contained harmful *Salmonella* when they left Defendant's custody and control.

9

FILED DATE: 5/31/2023 2:02 PM    2023L005626

58.     Despite having a legal duty to do so, Defendant failed to warn or disclose to customers—including Plaintiff and Class members—that the Contaminated Products contained contaminants, specifically *Salmonella*.

59.     The Contaminated Products are unreasonably dangerous and unsafe for human consumption because *Salmonella* causes illness, infections, and in some cases severe consequences such as death.

60.     The Contaminated Products obtained by Plaintiff and Class members were in a defective and unreasonably dangerous condition at the time they were obtained by Plaintiff and Class members.

61.     Plaintiffs purchased and/or consumed the Contaminated Products that they obtained from Defendant.

62.     As a result, Plaintiffs were immediately harmed because they consumed harmful levels of *Salmonella*.

63.     As a direct and proximate result of Defendant's failures set forth above, Plaintiff suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

64.     As a result of Defendant's failures, acts, and omissions, Plaintiff suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

65.     These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

FILED DATE: 5/31/2023 2:02 PM    2023L005626

WHEREFORE, the plaintiff, JOSEPH HOLLIS, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

## COUNT IV
### Breach of Implied Warranty of Merchantability

### Joseph Hollis v. Defendant

66.     Plaintiff repeats and realleges paragraphs 1–25, as if fully set forth herein.

67.     Defendant, as the seller of Jif peanut butter, impliedly warranted that the Contaminated Products were safe for human consumption, were not adulterated, and did not contain *Salmonella*.

68.     Contrary to those implied warranties, the Contaminated Products which Defendant manufactured, distributed, and sold were in fact adulterated, and contained *Salmonella*. Defendant breached the implied warranty of merchantability.

69.     Plaintiff purchased and/or consumed the Contaminated Products in reliance upon Defendant's implied warranties.

70.     Had Plaintiff known that the Contaminated Products they purchased and consumed were adulterated and contained *Salmonella*, they would not have purchased or consumed them.

71.     As a direct and proximate result of Defendant's breaches of warranties set forth above, Plaintiff suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

72.     As a result of Defendant's failures, acts, and omissions, Plaintiff suffered injury,

including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

73. These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

WHEREFORE, the plaintiff, JOSEPH HOLLIS, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

## COUNT V
### Unjust Enrichment

### Joseph Hollis v. Defendant

74. Plaintiff repeats and realleges paragraphs 1–25, as if fully set forth herein.

75. Defendant knew that the presence of *Salmonella* in the Contaminated Products was a material fact to consumers, including Plaintiff and Class members.

76. Because Defendant is responsible for, and controls, the manufacturing, marketing, distribution, and sale of the Contaminated Products, Defendant knew that its omissions and concealment of the presence of *Salmonella* would mislead Plaintiff and Class members, and induce them to buy products that they would otherwise not have been willing to purchase.

77. Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the Contaminated Products, they would have declined to purchase them.

78. Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries because they did not have any reason to suspect that the Contaminated Products were contaminated. Moreover, due to the products being sold as ready to eat, Plaintiff

FILED DATE: 5/31/2023 2:02 PM   2023L005626

FILED DATE: 5/31/2023 2:02 PM   2023L005626

and Class members were not required to cook or prepare the food to prevent contamination.

79.     As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff conferred a benefit on Defendant—*i.e.*, the money that they paid under the belief that these products were safe for human consumption.

80.     Defendant acquired and retained money belonging to Plaintiff as a result of its wrongful conduct. Defendant profited at the expense of Plaintiff because Plaintiff paid money for products that were worthless due to the fact that they are not safe for human consumption.

81.     Defendant has unjustly received and retained a benefit at the expense of Plaintiff because Defendant unlawfully acquired profits for worthless (and unsafe) food products while appreciating and knowing that its Contaminated Products were unsafe for human consumption.

82.     Defendant's retention of that benefit violates the fundamental principles of justice, equity, and good conscience. Under the principles of equity, Defendant should not be allowed to keep the money rightfully belonging to Plaintiff.

WHEREFORE, the plaintiff, JOSEPH HOLLIS, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

### <u>COUNT VI</u>
### Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (815 ILCS 505/1, *et seq.*)

### Joseph Hollis, as Father and Next Friend of Diesel Hollis, a Minor v. Defendant

83.     Plaintiff repeats and realleges paragraphs 1–25, as if fully set forth herein.

84.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, provides protection to consumers by mandating fair competition in commercial markets for goods and services.

13

FILED DATE: 5/31/2023 2:02 PM    2023L005626

85.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act".  815 ILCS 505/2.

86.     The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

87.     Defendant is a "person," as defined by 815 ILCS 505/1(c).

88.     Plaintiff and each member of the Illinois Subclass are "consumers," as defined by 815 ILCS 505/1(e), because they purchased Contaminated Products.

89.     The Contaminated Products are "merchandise," as defined by 815 ILCS 505/1(b).

90.     Defendant made false and fraudulent statements, and misrepresented, concealed, and omitted material facts regarding the Contaminated Products, including the misrepresentation that the Contaminated Products were safe for human consumption, and the omission that the Contaminated Products contained *Salmonella*.

91.     Defendant's aforementioned misrepresentations, omissions, and concealment regarding the Contaminated Products constitute deceptive and unconscionable acts or practices prohibited by the DTPA.

92.     Defendant's aforementioned misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

93.     Defendant's aforementioned misrepresentations, omissions, and concealment were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and

distribution of the Contaminated Products to Plaintiff and Illinois Subclass members.

94. Defendant's aforementioned misrepresentations, omissions, and concealment are unconscionable because they offend public policy and/or cause substantial injury to consumers.

95. Defendant's aforementioned conduct is deceptive and unlawful because it violated the Illinois Food, Drug & Cosmetic Act ("IFDCA"), 410 ILCS 620/3–3.3. The Contaminated Products were adulterated and misbranded, in violation of the IFDCA. 410 ILCS 620/2.11; 410 ILCS 620/14(a)(2)(A), (a)(2)(B), (d).

96. Defendant intended that Plaintiff rely on its respective aforementioned false statements, misrepresentations, omissions, and concealment of material facts in purchasing Contaminated Products.

97. Plaintiff reasonably relied on Defendant's respective misrepresentations, omissions, and concealment when they purchased the Contaminated Products.

98. Acting as reasonable consumers, had Plaintiff been aware of the true facts regarding the presence of *Salmonella* in the Contaminated Products, they would have declined to purchase these products.

99. Acting as reasonable consumers, Plaintiff could not have avoided the injuries suffered by purchasing the Contaminated Products because they did not have any reason to suspect that the products contained *Salmonella*. Moreover, the detection of *Salmonella* in food requires rigorous and specialized scientific testing that goes well beyond the level of inquiry a reasonable consumer would make into the issue, and, in any event, such testing was not possible without Plaintiff and Illinois Subclass members first purchasing the Contaminated Products.

100. As a direct and proximate result of Defendant's false, misleading, and deceptive

FILED DATE: 5/31/2023 2:02 PM    2023L005626

acts and practices set forth above, Plaintiff suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

101.    As a result of Defendant's failures, acts, and omissions, Plaintiff suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

102.    These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

WHEREFORE, the plaintiff, JOSEPH HOLLIS, AS FATHER AND NEXT FRIEND OF DIESEL HOLLIS, A MINOR, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

## **COUNT VII**
### **Negligence**

**Joseph Hollis, as Father and Next Friend of Diesel Hollis, a Minor v. Defendant**

103.    Plaintiff repeats and realleges paragraphs 1–25, as if fully set forth herein.

104.    Defendant manufactured distributed, marketed, promoted, and sold the Contaminated Products.

105.    Defendant owned a duty of care to Plaintiff to exercise reasonable care in manufacturing, distributing, marketing, promoting, and selling the Contaminated Products, including a duty to prevent the sale of food products contaminated with *Salmonella*.

106.    Plaintiffs are reasonable consumers who rely on Defendant to manufacture,

FILED DATE: 5/31/2023 2:02 PM    2023L005626

FILED DATE: 5/31/2023 2:02 PM    2023L005626

distribute, market, promote, and sell its food products in a safe and reasonable manner in compliance with food health and safety laws.

107.    Defendant was aware that Plaintiffs rely on Defendant to manufacture and sell safe food products, and in the case of the Contaminated Products, that they are ready to eat.

108.    Defendant breached its duty of care by:

a.  violating state and federal laws and rules prohibiting the sale of adulterated, contaminated, and misbranded foods, which laws were designed to protect the class of persons to which Plaintiff and Class members belong;

b.  failing to exercise reasonable care in setting manufacturing and quality standards, and ensuring proper hygiene of employees and equipment;

c.  failing to maintain clean facilities through reasonable and necessary health and safety measures;

d.  failing to ensure that the products that left its facilities were safe for human consumption; and

e.  failing to warn Plaintiff and Class members that the Contaminated Products were not safe to eat and were contaminated with *Salmonella*.

109.    As a direct and proximate result of Defendant's failures set forth above, Plaintiff suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

110.    As a direct and proximate result of Defendant's failures, acts, and omissions set forth above, Plaintiff suffered injuries of a personal and pecuniary nature, including but not

FILED DATE: 5/31/2023 2:02 PM    2023L005626

limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, emotional distress, and economic damages for medical treatment.

111.     These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

WHEREFORE, the plaintiff, JOSEPH HOLLIS, AS FATHER AND NEXT FRIEND OF DIESEL HOLLIS, A MINOR, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

<u>**COUNT VIII**</u>
**Strict Product Liability**

**Joseph Hollis, as Father and Next Friend of Diesel Hollis, a Minor v. Defendant**

112.     Plaintiffs repeat and reallege paragraphs 1–25, as if fully set forth herein.

113.     Defendant is in the business of selling Jif peanut butter to consumers.

114.     The Contaminated Products sold by Defendant contained harmful *Salmonella* when they left Defendant's custody and control.

115.     Despite having a legal duty to do so, Defendant failed to warn or disclose to customers—including Plaintiff and Class members—that the Contaminated Products contained contaminants, specifically *Salmonella*.

116.     The Contaminated Products are unreasonably dangerous and unsafe for human consumption because *Salmonella* causes illness, infections, and in some cases severe consequences such as death.

117.     The Contaminated Products obtained by Plaintiff and Class members were in a

FILED DATE: 5/31/2023 2:02 PM   2023L005626

defective and unreasonably dangerous condition at the time they were obtained by Plaintiff and Class members.

118.    Plaintiffs purchased and/or consumed the Contaminated Products that they obtained from Defendant.

119.    As a result, Plaintiffs were immediately harmed because they consumed harmful levels of *Salmonella*.

120.    As a direct and proximate result of Defendant's failures set forth above, Plaintiff suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

121.    As a result of Defendant's failures, acts, and omissions, Plaintiff suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

122.    These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

WHEREFORE, the plaintiff, JOSEPH HOLLIS, AS FATHER AND NEXT FRIEND OF DIESEL HOLLIS, A MINOR, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

**<u>COUNT IX</u>**
**Breach of Implied Warranty of**
**Merchantability**

**Joseph Hollis, as Father and Next Friend of Diesel Hollis, a Minor v.**
**Defendant**

19

FILED DATE: 5/31/2023 2:02 PM    2023L005626

123.    Plaintiff repeats and realleges paragraphs 1–25, as if fully set forth herein.

124.    Defendant, as the seller of Jif peanut butter, impliedly warranted that the Contaminated Products were safe for human consumption, were not adulterated, and did not contain *Salmonella*.

125.    Contrary to those implied warranties, the Contaminated Products which Defendant manufactured, distributed, and sold were in fact adulterated, and contained *Salmonella*. Defendant breached the implied warranty of merchantability.

126.    Plaintiff purchased and/or consumed the Contaminated Products in reliance upon Defendant's implied warranties.

127.    Had Plaintiff known that the Contaminated Products they purchased and consumed were adulterated and contained *Salmonella*, they would not have purchased or consumed them.

128.    As a direct and proximate result of Defendant's breaches of warranties set forth above, Plaintiff suffered damages by purchasing the Contaminated Products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

129.    As a result of Defendant's failures, acts, and omissions, Plaintiff suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Contaminated Products, personal injuries, emotional distress, and annoyance.

130.    These damages were reasonably foreseeable because the Contaminated Products are known to cause illnesses.

FILED DATE: 5/31/2023 2:02 PM    2023L005626

WHEREFORE, the plaintiff, JOSEPH HOLLIS, AS FATHER AND NEXT FRIEND OF DIESEL HOLLIS, A MINOR, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

### COUNT X
**Unjust Enrichment**

**Joseph Hollis, as Father and Next Friend of Diesel Hollis, a Minor v. Defendant**

131.    Plaintiff repeats and realleges paragraphs 1–25, as if fully set forth herein.

132.    Defendant knew that the presence of *Salmonella* in the Contaminated Products was a material fact to consumers, including Plaintiff and Class members.

133.    Because Defendant is responsible for, and controls, the manufacturing, marketing, distribution, and sale of the Contaminated Products, Defendant knew that its omissions and concealment of the presence of *Salmonella* would mislead Plaintiff and Class members, and induce them to buy products that they would otherwise not have been willing to purchase.

134.    Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the Contaminated Products, they would have declined to purchase them.

135.    Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries because they did not have any reason to suspect that the Contaminated Products were contaminated. Moreover, due to the products being sold as ready to eat, Plaintiff and Class members were not required to cook or prepare the food to prevent contamination.

136.    As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff conferred a benefit on Defendant—*i.e.*, the money that they paid under the

belief that these products were safe for human consumption.

137.     Defendant acquired and retained money belonging to Plaintiff as a result of its wrongful conduct. Defendant profited at the expense of Plaintiff because Plaintiff paid money for products that were worthless due to the fact that they are not safe for human consumption.

138.     Defendant has unjustly received and retained a benefit at the expense of Plaintiff because Defendant unlawfully acquired profits for worthless (and unsafe) food products while appreciating and knowing that its Contaminated Products were unsafe for human consumption.

139.     Defendant's retention of that benefit violates the fundamental principles of justice, equity, and good conscience. Under the principles of equity, Defendant should not be allowed to keep the money rightfully belonging to Plaintiff.

WHEREFORE, the plaintiff, JOSEPH HOLLIS, AS FATHER AND NEXT FRIEND OF DIESEL HOLLIS, A MINOR, by and through their attorneys, demands judgment against the defendant, THE J.M. SMUCKER COMPANY, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

Respectfully submitted,

POWER ROGERS, LLP

*/s/ Larry Rogers, Jr.*
Attorney for the Plaintiff

Larry Rogers, Jr.
Dominic C. LoVerde
**Power Rogers, LLP**
70 West Madison Street, 55th Floor
Chicago, IL 60602
Phone: (312) 236-9381
Fax: (312) 236-0920
lrogersjr@powerrogers.com
dloverde@powerrogers.com
Atty #: 65400

FILED DATE: 5/31/2023 2:02 PM    2023L005626

23